| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kelly Sweeney, SBN 239613<br>Glenn C. Kelble, SBN 162935<br>Sweeney & Kelble APC<br>445 S Figueroa St 31st Floor<br>Los Angeles CA 90071<br>Tel/Fax: (310) 955-4050<br>kelly@ksgklaw.com; glenn@ksgklaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>Viet Ideas, LLC<br><br><br><br><br><br><br>                                              Debtor(s). | CASE NO.: 8:23-bk-11642-TA<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION**<br>**FOR RELIEF FROM THE AUTOMATIC**<br>**STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(REAL PROPERTY)**<br><br>DATE:   12/5/2023<br>TIME:   10:30 AM<br>COURTROOM:   5B |
|---|---|

| **Movant:**   Residential Investment Trust IV |
|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 1                                      **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.


Date:   10/31/2023                          Sweeney & Kelble APC
                                            _____
                                            Printed name of law firm (if applicable)


                                            Glenn C. Kelble
                                            _____
                                            Printed name of individual Movant or attorney for Movant


                                            /s/ Glenn C. Kelble
                                            _____
                                            Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify):*


2. **The Property at Issue (Property):**

   a. Address:

   *Street address*:   19222 East Valley Drive
   *Unit/suite number*:
   *City, state, zip code*:   Villa Park, CA 92861

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _2_____):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*) _8/14/2023_ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

      (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 3                          **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b.     Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:


6. **Evidence in Support of Motion: (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _4___.

d. ☐ Other:


7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                           Page 4                              **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  10/31/2023

Sweeney & Kelble APC
Printed name of law firm (*if applicable*)

Glenn C. Kelble
Printed name of individual Movant or attorney for Movant

/s/ Glenn C. Kelble
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 5                                F 4001-1.RFS.RP.MOTION

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY**
**Continuation Page**

**4. Grounds for Relief from Stay:**
   **a. Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:**
      **(6) other cause for relief from stay**

## No Equity

The Ninth Circuit has held that a 20%+ equity cushion (based on the property's fair market value, adequately protects a creditor's security interest. [*In re Mellor* (9th Cir. 1984) 734 F2d 1396, 1401] - however an equity cushion of 10% or less does not provide adequate protection. [See *In re Kost* (D WY 1989) 102 BR 829, 832; *In re Tucker* (BC SD NY 1980) 5 BR 180, 183]. Movant's equity cushion in the property at the time Debtor's petition was filed on August 14, 2023 was 18.33% ($827,819.80 equity cushion). The value of the Property is $4,515,000.00. Movant's claim as of October 30, 2023 was $3,734,946.40 (a $725,379.96 equity cushion, or 16.07%). This equity position is being reduced daily due to accruing interest ($22,250.00 monthly at the non-default rate and $38,937.50 monthly at default interest) and increasing property taxes. Total liens on the Property are $5,581,124.20 as of the petition date and as of October 30, 2023 the liens total $5,683,564.04. Unpaid and delinquent property taxes of $54,673.64 exist against the Property. In addition, another $22,625.62 in property taxes comes due on 12/11/2023.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*)  Anthony Martinez                                                                                    , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*state title and capacity*):
   Vice President of Credit

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached):*

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit  1   .

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit  2     .

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify):*

4. a. The address of the Property is:

   *Street address*:  19222 East Valley Drive
   *Unit/suite number*:
   *City, state, zip code*:  Villa Park, CA 92861

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   Deed of Trust and Assignment of Rents recorded in Orange County official records as document # 2022000164609 on 4/29/2022. (Orange APN No. 372-351-15)

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property *(check all applicable boxes)*:

   a. ☐ Debtor's principal residence    b. ☐ Other residence
   c. ☐ Multi-unit residential    d. ☐ Commercial
   e. ☐ Industrial    f. ☐ Vacant land
   g. ☒ Other (*specify*): single family residence being rehabbed ("fix and flip")

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*): Second Deed of Trust

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not   list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

      The deed was recorded on (*date*) _4/29/2022_ .

7. Movant holds a ☒ deed of trust   ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit _2_ .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _1_ .

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _3_ .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $3,337,500.00 | $ 0.00 | $3,337,500.00 |
| b. | Accrued interest: | $246,789.58 | $99,939.84 | $346,729.42 |
| c. | Late charges | $25,086.88 | $ 0.00 | $25,086.88 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $14,325.75 | $2,500.00 | $16,825.75 |
| e. | Advances (property taxes, insurance): | $8,804.35 | $ 0.00 | $8,804.35 |
| f. | Less suspense account or partial balance paid: | $[ 0.00        ] | $[ 0.00        ] | $[ 0.00        ] |
| g. | TOTAL CLAIM as of (*date*): 10/30/2023 | $3,632,506.56 | $102,439.84 | $3,734,946.40 |

   h. ☒ Loan is all due and payable because it matured on (*date*) _4/29/2023_

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) _4/10/2023_  or ☒ none recorded.

   b. Notice of sale recorded on (*date*) _7/17/2023_  or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _8/14/2023_  or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _-_____  or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _-_____  or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _-_____  or ☒ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 7                    **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan: Entire loan is due. Loan matured on 4/29/2023

    a.  Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b.  Number of payments that have come due and were not made:_____. Total amount: $_____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the ___day of each month thereafter. If the payment is not received within _____days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $4,515,000.00 , established by:

        (1) ☒ An appraiser's declaration with appraisal is attached as Exhibit 5 .

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

|  | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Anchor Loans, LP | $3,650,501.00 | $3,734,946.40 |
| 2nd deed of trust: | **Chi** Phung Luu To | $876,444.00 | $876,444.00 |
| 3rd deed of trust: | Multiple Junior DOTs | $1,017,500.00 | $1,017,500.00 |
| Judgment liens: |  | $ 0.00 | $ 0.00 |
| Taxes: | Orange County | $ 0.00 | $54,673.64 |
| Other: |  | $ 0.00 | $ 0.00 |
| **TOTAL DEBT: $5,683,564.04** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 6 and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☒ Other (*specify*): Property Tax Statement.

    g.  ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $725,379.96 and is 16.07 % of the fair market value of the Property.

    h.  ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is -$1,168,564.04 .

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                        Page 8                                        **F 4001-1.RFS.RP.MOTION**

i.  ☒  Estimated costs of sale: $270,900.00            (estimate based upon    6.00    % of estimated gross sales price)

j.  ☒  The fair market value of the Property is declining because:
Property taxes continue to accrue on the Property.


12. ☐  (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                                      $
(For details of type and amount, see Exhibit _____)

e.  Attorneys' fees and costs:                                                                                $
(For details of type and amount, see Exhibit _____)

f.  Less suspense account or partial paid balance:                                        $[                         ]

                        TOTAL POSTPETITION DELINQUENCY:              $

g.  Future payments due by time of anticipated hearing date (*if applicable*):_____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):
$ _____  received on (*date*) _____
$ _____  received on (*date*) _____
$ _____  received on (*date*) _____

i.  ☐  The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 9                                      **F 4001-1.RFS.RP.MOTION**

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

   1. Case name: _____
      Chapter: _____  Case number: _____
      Date dismissed: _____   Date discharged: _____   Date filed:_____
      Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

   2. Case name: _____
      Chapter: _____  Case number: _____
      Date dismissed: _____   Date discharged: _____   Date filed:_____
      Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

   3. Case name: _____
      Chapter: _____  Case number: _____
      Date dismissed: _____   Date discharged: _____   Date filed:_____
      Relief from stay regarding the Property  ☐ was  ☐ was not  granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 10                    **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental
declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would
have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/1/2023 | Anthony Martinez | |
| --- | --- | --- |
| *Date* | *Printed name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 11                                    **F 4001-1.RFS.RP.MOTION**

## REAL PROPERTY DECLARATION
**Continuation Page**

### <u>No Equity</u>

The Ninth Circuit has held that a 20%+ equity cushion (based on the property's fair market value, adequately protects a creditor's security interest. [*In re Mellor* (9th Cir. 1984) 734 F2d 1396, 1401] - however an equity cushion of 10% or less does not provide adequate protection. [See *In re Kost* (D WY 1989) 102 BR 829, 832; *In re Tucker* (BC SD NY 1980) 5 BR 180, 183]. Movant's equity cushion in the property at the time Debtor's petition was filed on August 14, 2023 was 18.33% ($827,819.80 equity cushion). The value of the Property is $4,515,000.00. Movant's claim as of October 30, 2023 was $3,734,946.40 (a $725,379.96 equity cushion, or 16.07%). This equity position is being reduced daily due to accruing interest ($22,250.00 monthly at the non-default rate and $38,937.50 monthly at default interest) and increasing property taxes. Total liens on the Property are $5,581,124.20 as of the petition date and as of October 30, 2023 the liens total $5,683,564.04. Unpaid and delinquent property taxes of $54,673.64 exist against the Property. In addition, another $22,625.62 in property taxes comes due on 12/11/2023.

**Exhibit 1**

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 919794                    Date: Friday, March 18, 2022                    Thousand Oaks, California

<u>19222 East Valley Drive, Villa Park, CA 92861</u>
Property Address

**1.    BORROWER'S PROMISE TO PAY**
　　In return for a loan that Borrower has received, Borrower promises to pay U.S. **$3,337,500.00**, or so much thereof as shall have been advanced, (this amount will be called "principal"), plus interest, to the order of **Anchor Loans, LP, a Delaware Limited Partnership, as to an undivided 100.000% interest equal to $3,337,500.00** (who will be called "Lender"). Borrower understands that the Lender may transfer this Note in whole or in part. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2.    INTEREST**
　　Borrower will pay interest at a yearly rate as described in paragraph 3 below. Interest shall be calculated based upon a 360 day year and, when less than one month's period, charged for the actual number of days elapsed, which shall include the day funds sufficient to pay off the full amount of the outstanding principal are received.
　　Interest commences on <u>March                                        , 2022</u> and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.
　　Interest will be charged on unpaid principal until the full amount of principal has been paid.
　　Borrower also agrees to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal amount disbursed at the close of escrow of this loan. ***April 29,2022***

**3.    PAYMENTS**
　　Borrower's payments are:  [ X ] Interest Only    [ ] Fully Amortized    [ ] Other
　　Borrower will make its payments on the first day of each month as follows:
***June 01,2022***

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 11 | Starting May 01, 2022 | 8.000 % | $22,250.00 |
| 1 | Starting March            , 2023 | 8.000 % | $3,359,008.43 |

***April 29,2023***
　　Borrower will make these payments until Borrower has paid all of the principal and interest and any other charges that Borrower may owe under this Note. If on <u>March                        , 2023</u> (the "Due Date") Borrower still owes amounts under this Note (balloon balance), Borrower will pay all those amounts, in full, on that date. ***April 29,2023***
　　Borrower will make its payments payable to **Anchor Loans, LP, One Baxter Way, Suite 220, Thousand Oaks, CA 91362** ("Servicing Agent"), or at a different place, if Borrower is notified by the Note Holder or the Agent for the Note Holder.
　　All payments made by the maker on this Note shall be applied first to accrued unpaid interest, then to any  charges and expenses other than interest (including, without limitation, late charges and fees) and then to principal. *Note Holder shall have the right to apply any payment to the repayment of amounts advanced by the Note Holder for Future Advances (as defined in the Deed of Trust described below), expenses, or Impounds (as described in paragraph 2 of the Deed of Trust). The Note Holder shall have the right to apply payments, as described in the foregoing sentence, in its sole discretion and without regard for any specific payment designation made by any party delivering payment to the Note Holder on my behalf.

**4.    BORROWER'S FAILURE TO PAY AS REQUIRED**
　　**(A) Late Charge For Overdue Payments.** If Note Holder fails to receive any payments of interest or principal within ten (10) days after the date the same is due and payable, a late charge to compensate Note Holder for damages Note Holder will suffer as a result shall be immediately due and payable. Borrower acknowledges and agrees that a default in making the payments agreed to be paid when due will result in Note Holder's incurring additional expenses in servicing the loan, including, but not limited to sending out notices of delinquency, computing interest, and segregating the delinquent sums from not delinquent sums on all accounting, loan and data processing records, in loss to Note Holder of the use of the money due, and in frustration to Note Holder in meeting its other financial commitments. Borrower acknowledges and agrees that if for any reason Borrower fails to pay any amounts due under this Note so that Note Holder fails to receive such payments within ten (10) days after the same are due and payable, Note Holder shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore agree that a sum equal to **10.00%** of each payment that becomes delinquent ten (10) days after its due date is a reasonable estimate of the fair average compensation for the loss and damages Note Holder will suffer, that such amount shall be presumed to be the amount of damages sustained by Note Holder in such case, and that Borrower agrees to pay Note Holder this sum on demand.
　　In the event a balloon payment is delinquent more than 10 days after the date it is due, Borrower agrees to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.
　　**(B) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required Borrower to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example and without limitation, reasonable attorneys' fees and costs. A default upon any interest of any Note Holder shall be a default upon all interests.
　　**(C) Default.** Borrower hereby agrees that upon the occurrence of a default under this Note, or under any other obligation secured by a lien on the property covered by the Deed of Trust (whether junior or senior to the Deed of Trust), Note Holder shall be entitled to receive and Borrower agrees to pay interest on the entire unpaid principal balance at a rate equal to the interest rate specified above plus six percent (6%) (the "Default Rate"). The Default Rate shall be computed from the occurrence of the default until the earlier of the date upon which the default is cured or the date upon which this Note is paid in full.



INIT. _TMN_
[919794/Valley]
Note                    Page 1 of 3

**5.    BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PREMIUM**

Borrower has the right to make payments of principal at any time before they are due, which is known as "prepayment." If Borrower pays all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, Borrower agrees to pay a prepayment premium computed as follows: NONE.

**6.    BORROWER'S WAIVERS**

Borrower waive its rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if Borrower fail to keep its promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7.    RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of them is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person, who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of them together. This means that anyone of the Borrower, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

**8.    THIS NOTE IS SECURED BY A DEED OF TRUST.**

This Note is secured by a Deed of Trust and Assignment of Rents ("Deed of Trust") dated the same date of this Note.

The Deed of Trust contains a provision that gives the Note Holder the right to accelerate this Note and declare all sums owed hereunder to be immediately due and payable upon the occurrence of certain events, as follows:

"**Lender's Right to Require The Loan to be Paid Off Immediately.**   If without Lender's prior written consent the Property encumbered by this Deed of Trust or any portion thereof or any interest therein is sold, conveyed, mortgaged, transferred, encumbered (including, but not limited to, PACE/HERO loans, any "clean energy" lien or loan designated to assist with "clean energy" upgrades, renovations, or products, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Security Instrument, land sale leaseback, installment sale contract, lease-option leaseback, contract for deed or conditional sales contract financing), hypothecated, assigned, leased in its entirety for a term of greater than two (2) years or transferred, if the borrower shall be voluntarily or involuntarily divested of title to the Property, or any portion thereof or any interest therein, in any manner, or if more than 25% of the stock, limited partnership interests, managing or non-managing membership interests or any other direct or indirect legal or beneficial ownership interests (as the case may be) of Borrower or any partner, member, shareholder or any other direct or indirect legal or beneficial owner of Borrower shall be sold, conveyed, mortgaged, transferred, hypothecated, assigned or encumbered (each of such foregoing events shall be referred to herein as a "Transfer"), the whole sum of outstanding principal and all accrued and unpaid interest under the Note secured hereby shall, at the option of Lender and without notice, become immediately due and payable.  Lender's option hereunder may be exercised at any time after any such Transfer event, and the acceptance by Lender of one or more installments of principal or interest under the Note from any person thereafter shall not constitute a waiver of Lender's option. Consent to one such Transfer shall not be deemed to be waiver of the right to require such consent to future successive Transfers. Notwithstanding the foregoing, if this Deed of Trust is a lien on residential property containing one to four units, then, the term "Transfer" shall not include a further encumbrance of the Property by a lien that is junior to this Deed of Trust upon the death of a joint tenant."

**9.    EXTENSION**

If Borrower is in full compliance with the terms of this Note, and no default exists under this Note or the Security Instrument (Deed of Trust, Mortgage, or any other security instrument), Borrower may request an extension of the Due Date for a period of three (3) months which Note Holder may, at its sole and absolute discretion, grant or deny. If Borrower requests an extension, Borrower shall deliver a written request for an extension to Note Holder's servicing agent no less than 7 calendar days before the Due Date. If an extension is granted by Note Holder, Borrower shall incur a charge ("Extension Charge"), in an amount reflecting a pro-rated portion of the origination fee paid at the time the Loan was made, and which shall be payable as a one-time fee, through monthly installments, or some combination thereof.

If Borrower fails to request an extension, Note Holder may, in its sole and absolute discretion, extend the Due Date for three (3) months and if it does so, an Extension Charge, assessed as a fee equal to 1.10% of the greater of the maximum principal balance or the outstanding balance of the loan, will be added to the principal balance of this Note and will accrue interest at the Note rate.

An extension of the Due Date shall not be deemed a waiver of any right of Note Holder pursuant to this Note or any other documents executed in connection with this Note. An extension of the Due Date does not create any obligation on the part of Lender or Servicer to grant any additional or subsequent extensions of the Due Date.

**10. MAXIMUM RATE**

Neither this Note nor any of the other loan documents executed in connection herewith (collectively, "Loan Documents") shall be construed to require the payment or permit the collection of any interest or any late payment charge in excess of the maximum rate permitted by law. If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, Borrower shall not be obligated to pay such excess notwithstanding any other provision of this Note or the other Loan Documents. If Note Holder shall collect amounts which are deemed to constitute interest and which would increase the effective interest rate to a rate in excess of the maximum rate permitted by law, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Note Holder, be returned to Borrower or credited against the outstanding principal balance of this Note.

**11. GENERAL PROVISIONS**

Borrower acknowledges and agrees  that time is of the essence with respect to its obligations under this Note. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the

determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. The words "include" and "including" shall be interpreted as if followed by the words "without limitation." This Note, and its validity, enforcement and interpretation, shall be governed by California law (without regard to any conflict of laws principles) and applicable United States federal law.

**12. COUNTERPARTS**
    This Agreement and the signature pages hereto may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute a single agreement.

**13. FINAL EXPRESSION/NO ORAL AGREEMENTS**
    READ THIS DOCUMENT CAREFULLY.   THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

    BORROWER:
    **VIET IDEAS, LLC, a California Limited Liability Company**

    Borrower *By: Tuong Minh Nguyen*, Manager        Date 4/7/2022

---

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

# Exhibit 2

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||||||| 28.00
* $ R 0 0 1 3 7 0 4 6 8 2 $ *
**2022000164609  4:09 pm  04/29/22**
227 RW9A D11   8
0.00 0.00 0.00 0.00 21.00 0.00 0.000.000.00 0.00

RECORDING REQUESTED BY:
PROVIDENT TITLE
Order No. 80029131
Escrow No. 7784-LL
Parcel No. 375-351-15

**AND WHEN RECORDED MAIL DOCUMENT TO:**

ANCHOR LOANS, LP
ONE BAXTER WAY, SUITE 220
THOUSAND OAKS, CA. 91362
LOAN NO.: 80029131

**SPACE ABOVE FOR RECORDER'S USE ONLY**

## DEED OF TRUST

### Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☒ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
($3.00 Additional Recording Fee Applies)

**Recording Requested By**
Anchor Loans, LP

**When Recorded Mail To**
Anchor Loans, LP
One Baxter Way, Suite 220
Thousand Oaks, CA 91362

Title Order No. 80029131

Space above this line for recorder's use

# DEED OF TRUST AND ASSIGNMENT OF RENTS

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **919794**

This Deed of Trust and Assignment of Rents ("Deed of Trust"), is made this **18th day of March, 2022**, by and among the trustor, **VIET IDEAS, LLC, a California Limited Liability Company** whose address is **10502 Villa Del Cerro, North Tustin, CA 92705** (herein "Borrower"), **Anchor Loans, LP, a Delaware Limited Partnership** (herein "Trustee"), and **Anchor Loans, LP, a Delaware Limited Partnership, as to an undivided 100.000% interest equal to $3,337,500.00** (CFL License No. 603K850), as beneficiary (herein "Lender").

### GRANT IN TRUST, WITH POWER OF SALE

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Orange**, State of California: **LOT 7 OF TRACT NO. 7244, IN THE CITY OF VILLA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 272 PAGE(S) 15 AND 16 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD.**, (the "Real Property") which has the address of **19222 East Valley Drive, Villa Park, CA 92861**, APN: **372-351-15** (herein "Property Address");

**TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents** (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, architectural and grading plans, specifications, engineering, approvals, permits, construction contractors, vendor agreements and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; all contract rights pursuant to any purchase and sale agreements or any other agreement, development and use rights, governmental permits and licenses, applications, architectural and engineering plans, specifications and drawings, as built drawings, chattel paper, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Lender), which arise from or relate to construction on the Real Property or to any business now or later to be conducted on it, or to the Real Property generally; together with and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **March 18, 2022**, in the principal sum of U.S. **$3,337,500.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender when evidenced by promissory notes stating that said notes are secured hereby (herein "Future Advances"); (c) performance of each and every agreement, obligation, covenant and condition made by or imposed upon Borrower under this Deed of Trust (including, without limitation, those contained in any document incorporated by reference herein) and all supplements, amendments, modifications, extensions and renewals thereof;

INIT. _TMN_
[919794/Valley]
Deed of Trust (CFL)    Page 1 of 7

and in addition (d) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions (including but not limited to renewal fees of up to 2.0% of the original principal amount secured hereby for each extension granted), modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by this Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require or Lender may, in its sole discretion, apply any amounts held by Lender in the Holdback Account (as defined in the Construction Holdback Agreement) to payment of taxes, assessments, insurance premiums and ground rents as they fall due.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies

and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender at Lender's address set forth on the first page of this Deed of Trust or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. Governing Law.** This Deed of Trust shall be governed by the Laws of the State of California. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of

INIT. ___*TMN*___
[919794/Valley]
Deed of Trust (CFL)    Page 3 of 7

Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require the Loan to be Paid off Immediately.** If without Lender's prior written consent the Property encumbered by this Deed of Trust or any portion thereof or any interest therein is sold, conveyed, mortgaged, transferred, encumbered (including, but not limited to, PACE/HERO loans, any "clean energy" lien or loan designated to assist with "clean energy" upgrades, renovations, or products, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Security Instrument, land sale leaseback, installment sale contract, lease-option leaseback, contract for deed or conditional sales contract financing), hypothecated, assigned, leased in its entirety for a term of greater than two (2) years or transferred, if the borrower shall be voluntarily or involuntarily divested of title to the Property, or any portion thereof or any interest therein, in any manner, or if more than 25% of the stock, limited partnership interests, managing or non-managing membership interests or any other direct or indirect legal or beneficial ownership interests (as the case may be) of Borrower or any partner, member, shareholder or any other direct or indirect legal or beneficial owner of Borrower shall be sold, conveyed, mortgaged, transferred, hypothecated, assigned or encumbered (each of such foregoing events shall be referred to herein as a "Transfer"), the whole sum of outstanding principal and all accrued and unpaid interest under the Note secured hereby shall, at the option of Lender and without notice, become immediately due and payable. Lender's option hereunder may be exercised at any time after any such Transfer event, and the acceptance by Lender of one or more installments of principal or interest under the Note from any person thereafter shall not constitute a waiver of Lender's option. Consent to one such Transfer shall not be deemed to be waiver of the right to require such consent to future successive Transfers. Notwithstanding the foregoing, if this Deed of Trust is a lien on residential property containing one to four units, then, the term "Transfer" shall not include a further encumbrance of the Property by a lien that is junior to this Deed of Trust upon the death of a joint tenant.

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby agrees to the following:

(a) Assignment of Rents: Borrower presently assigns to Lender all of the Borrower's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. This is a absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Code section 2938.

(b) Collection of Rents: Upon acceleration under paragraph 18 hereof or abandonment of the Property and without further notice, Lender shall have the right to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Beneficiary as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent or through a receiver. Lender and the receiver, if a receiver shall be appointed, shall be liable to account only for those rents actually received.

(c) Appointment of Receiver: Borrower hereby consents to the appointment of a receiver over the Property upon an Event of Default, without further notice to Borrower. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Further, Lender shall have the right to see the appointment of a receiver on an ex parte basis. In such an event, Lender shall not be required to have recorded a Notice of Default or Election to Sell or other such notice prior to seeking such receiver. Employment by Lender or Lender's Affiliate, as defined herein, shall not disqualify a person from serving as a receiver.

(d) Rent Rolls and Tenant Estoppel. As further additional security hereunder, in the event that any portion of the subject property is leased to any party, Borrower shall provide Lender with fully a executed Tenant Estoppel Letter and copy of fully executed valid and current Lease for each tenant in possession of any leased portion of the subject property, a full Rent Roll evidencing the nature of any lease of any portion of the subject property, including but not limited to an identification of the portion of the subject property so leased, the name of the Tenant, the term of the tenancy, and the amount of periodic rent and other funds to the Borrower under the terms of the Lease.

**18. Default; Acceleration; Additional Remedies.** Any of the following events shall be deemed a default under this Deed of Trust: (a) the occurrence of a default in the payment, when due, of principal or interest on the Note or any other sum secured hereby; or (b) the occurrence of a default under any term, covenant, agreement, condition, provision, representation or warranty of Borrower contained in this Deed of Trust or any other agreement secured hereby; (c) the insolvency of Borrower or any Guarantor, the appointment of a receiver for any part of Borrower's or Guarantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Guarantor; or (d) the occurrence of a default under any other note evidencing a loan made by Lender or serviced, arranged or made by Anchor Loans, LP or its Affiliates to Borrower or Borrower's partner, member, subsidiary or Borrower's Affiliate. As used in this

INIT. _____ *TMN*
[919794/Valley]
Deed of Trust (CFL)    Page 4 of 7

Deed of Trust, "Affiliate" means any person or entity directly or indirectly controlling, controlled by or under common control with a designated person or entity. Upon the occurrence of any default under this Deed of Trust, Lender may, at its option, declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Borrower, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Borrower to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee, or Lender, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**20. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**22. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California. Further, Lender may collect a fee for any and all costs incurred by Lender (or its assignee) to record ("Recording Fee"), in the applicable official record, this Deed of Trust, any subsequent assignment of this Deed of Trust, any document required to be recorded pursuant to paragraph 18 of this Deed of Trust, any partial or full reconveyance of this Deed of Trust, and any other document(s) the recording of which requires payment of a Recording Fee. The Recording Fee shall include any surcharges required to be paid pursuant to applicable law or regulation.

MISCELLANEOUS PROVISIONS

**23. General Provisions.** Borrower acknowledges and agrees that time is of the essence with respect to the obligations under this Deed of Trust and the Note secured by this Deed of Trust. A determination that any provision of this Deed of Trust is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Deed of Trust to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Deed of Trust may not be amended except in a writing specifically intended for such purpose and executed by Borrower and Lender. Captions and headings in this Deed of Trust are for convenience only and shall be disregarded for any other purpose. The words "include" and "including" shall be interpreted as if followed by the words "without limitation." This Deed of Trust, and its validity, enforcement and interpretation, shall be governed by California law (without regard to any conflict of laws principles) and applicable United States federal law.

**24. Final Expression/No Oral Agreements.** READ THIS DOCUMENT CAREFULLY. THIS DEED OF TRUST REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

**25. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**26. Environmental Provisions.**

(a) Borrower hereby represents and warrants to Lender that (i) the Property is not and has not been a site for the use, generation, manufacture, storage, treatment, release, threatened release, discharge, disposal, transportation or presence of oil or other petroleum products, flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, or any other "hazardous substance as defined in Section 25281 of the California Health

INIT. _TMN_

[919784/Valley]
Deed of Trust (CFL)        Page 5 of 7

and Safety Code (collectively, "Hazardous Materials"); and (ii) no Hazardous Materials Claims (defined below) relating to the Property are pending or threatened. Borrower agrees at all times to comply with, and cause the Property to comply with, all federal, state and local laws, ordinances and regulations and all judgments, consent decrees, settlements or compromises relating to Hazardous Materials (collectively, "Hazardous Materials Laws"). Borrower shall immediately notify Lender in writing of any claims or actions pending or threatened against Borrower or the Property by any governmental entity or agency or any other person or entity relating to Hazardous Materials ("Hazardous Materials Claims").

(b) Borrower agrees to indemnify, defend, and hold harmless Lender and its officers, shareholders, directors, partners, employees, agents, successors and assigns from and against any costs, expenses, losses, debts or liabilities directly or indirectly arising from or in connection with any of the following: (i) any Hazardous Materials Claims relating to the Property; (ii) any failure by Borrower to perform any covenants or agreements contained in this Paragraph; or (iii) any breach or inaccuracy of any representations or warranties of Borrower contained in this Paragraph.

(c) In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Deed of Trust, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (1) waive its lien on such environmentally impaired or affected portion of the Property and (2) exercise (i) the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment, and (ii) any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Borrower shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Property and Borrower knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release. All costs and expenses, including, but not limited to, attorneys' fees, incurred by Lender in connection with any action commenced under this Paragraph, including any action required by California Code of Civil Procedure Section 726.5(b) to determine the degree to which the Property is environmentally impaired, plus interest thereon at the Default Rate until paid, shall be added to the indebtedness secured by this Deed of Trust and shall be due and payable to Lender upon its demand made at any time following the conclusion of such action.

(d) Borrower and Lender agree that the foregoing provisions of this Paragraph constitutes (i) Lender's written request for information concerning the environmental condition of the Property (and Borrower's response) for purposes of California Code of Civil Procedure Section 726.5; and (ii) an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

**27. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**28. Counterparts.** This Agreement and the signature pages hereto may be executed in one or more counterparts, each of which shall be binding on the parties and all of which shall constitute a single agreement.

---

**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

---

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at its address set forth on page one of this Deed of Trust, of any default under the superior encumbrances and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

**VIET IDEAS, LLC, a California Limited Liability Company**

Borrower *By: Tuong Minh Nguyen*, **Manager**          Date  4/7/2022

---

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

---

State of California
County of _____ORANGE_____
On ___04/07/2022___ before me, ___VINCENT PHUONG NGUYEN___ , notary public,
personally appeared ___TUONG MINH NGUYEN___ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____                    (Seal)



VINCENT PHUONG NGUYEN
COMM. # 2333877
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. SEPT. 20, 2024

# Exhibit 3

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

88.00

*$ R 0 0 1 3 8 5 0 8 0 8 $*

2022000248981 11:15 am 07/15/22
65 RW10A A30   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

RECORDING REQUESTED BY SIMPLIFILE
WHEN RECORDED MAIL TO:
ANCHOR ASSETS XVII, LLC
ONE BAXTER WAY, STE. 220
THOUSAND OAKS, CA 91362
818-867-2054 / 310-395-0010

## ASSIGNMENT DEED OF TRUST

Ref AL: 919794
Property Address: 19222 EAST VALLEY DRIVE, VILLA PARK, CA 92861
Parcel Number: 372-351-15

For value received, ANCHOR LOANS, LP, a Delaware Limited Partnership ("Assignor"), having an address of One Baxter Way, Ste. 220, Thousand Oaks, CA 91362, the undersigned holder, hereby grants, sells, assigns, conveys and transfers, without recourse to ANCHOR ASSETS XVII, LLC, a California Limited Liability Company ("Assignee"), having an address of One Baxter Way, Ste. 220, Thousand Oaks, CA 91362 all of its right, title and interest under that certain security instrument ("Security Instrument") dated March 18, 2022, executed by VIET IDEAS, LLC, a California Limited Liability Company, to ANCHOR LOANS, LP, A DELAWARE LIMITED PARTNERSHIP, and given to secure payment of $3,337,500.00, recorded as Instrument Number (2022000164609) on 29th day of April, 2022 of official records in ORANGE County, CA, describing land there as:

LOT 7 OF TRACT NO. 7244, IN THE CITY OF VILLA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 272 PAGE(S) 15 AND 16 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD

TOGETHER WITH the Note(s) or other Obligation therein described, and the money due and to grow due thereon, with interest, and all rights accrued or to accrue under such Security Instrument.
TO HAVE AND TO HOLD the same unto the said Assignee, its successors and assigns, forever, subject only to all the provisions contained in said Security Instrument and the Note or other Obligation. AND, the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expenses, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.
AND the Assignor covenants that there is now and owing the said Note or other Obligation secured thereby, and there are no set-offs, counterclaims or defenses against the same, in law or equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.

In reference herein to any parties, use of any particular gender or the plural or singular name is intended to include the appropriate gender or number as the text of the within instrument may require.

IN WITNESS WHEREOF, the said Assignor has hereunto set its hand and seal or caused these presents to be signed by its proper officers and its seal, if any, to be hereto affixed this 11th day of May, 2022.

**ANCHOR LOANS, LP, a Delaware Limited Partnership**

By: _____

Joshua Donaghy
Title: Post Closing Manager

---

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

---

STATE OF CALIFORNIA
COUNTY OF VENTURA

On 5/11/2022 , before me, DINA M. TAYLOR , notary
public personally appeared JOSHUA DONAGHY
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal,

_____
Notary Public commissioned for said County and State

(This area for official notary seal)

DINA M. TAYLOR
Notary Public - California
Los Angeles County
Commission # 2328509
My Comm. Expires Jun 13, 2024

PREPARED BY:
ANCHOR LOANS, L.P.
ONE BAXTER WAY, STE. 220
THOUSAND OAKS, CA 91362

Loan # 919794

## ENDORSEMENT AND ASSIGNMENT BY ALLONGE

This is an Allonge, which is attached to and made a part of the following note (the "Note") from, ANCHOR LOANS, LP, a Delaware Limited Partnership in favor of ANCHOR ASSETS XVII, LLC, a California Limited Liability Company:

(i) That certain $3,337,500.00 Note, dated March 18, 2022, executed by VIET IDEAS, LLC in favor of ANCHOR LOANS, LP, A DELAWARE LIMITED PARTNERSHIP;

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, ANCHOR LOANS, LP, a Delaware Limited Partnership, hereby endorses, assigns and transfers to ANCHOR ASSETS XVII, LLC, a California Limited Liability Company, without recourse or warranty, all of its right, title and interest in and to the Note.

This Allonge is intended to be attached to the Note and by this reference is made a part thereof.

**ANCHOR LOANS, LP, a Delaware Limited Partnership**

By: Joshua Donaghy, Post Closing Manager          MAY 1 1 2022

                                                                                    Date

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||  88.00
* $ R 0 0 1 3 8 7 3 9 3 3 $ *
2022000261548 10:08 am 07/28/22
227 507A A32  2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

RECORDING REQUESTED BY SIMPLIFILE
WHEN RECORDED MAIL TO:
RESIDENTIAL INVESTMENT TRUST IV, DST
ONE BAXTER WAY, STE. 220
THOUSAND OAKS, CA 91362
818-867-2054 / 310-395-0010

## ASSIGNMENT DEED OF TRUST

Ref AL: 919794
Property Address: 19222 EAST VALLEY DRIVE, VILLA PARK, CA 92861
Parcel Number: 372-351-15

For value received, ANCHOR ASSETS XVII, LLC, a California Limited Liability Company ("Assignor"), having an address of One Baxter Way, Ste. 220, Thousand Oaks, CA 91362, the undersigned holder, hereby grants, sells, assigns, conveys and transfers, without recourse to RESIDENTIAL INVESTMENT TRUST IV, a Delaware Statutory Trust ("Assignee"), having an address of One Baxter Way, Ste. 220, Thousand Oaks, CA 91362 all of its right, title and interest under that certain security instrument ("Security Instrument") dated March 18, 2022, executed by VIET IDEAS, LLC, a California Limited Liability Company, to ANCHOR LOANS, LP, A DELAWARE LIMITED PARTNERSHIP, and given to secure payment of $3,337,500.00, recorded as Instrument Number (2022000164609) on 29th day of April, 2022 of official records in ORANGE County, CA, describing land there as:

LOT 7 OF TRACT NO. 7244, IN THE CITY OF VILLA PARK, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 272 PAGE(S) 15 AND 16 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, WHERE THEY HAVE BEEN PREVIOUSLY RESERVED IN INSTRUMENTS OF RECORD

TOGETHER WITH the Note(s) or other Obligation therein described, and the money due and to grow due thereon, with interest, and all rights accrued or to accrue under such Security Instrument.

TO HAVE AND TO HOLD the same unto the said Assignee, its successors and assigns, forever, subject only to all the provisions contained in said Security Instrument and the Note or other Obligation. AND, the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expenses, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

AND the Assignor covenants that there is now and owing the said Note or other Obligation secured thereby, and there are no set-offs, counterclaims or defenses against the same, in law or equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.

In reference herein to any parties, use of any particular gender or the plural or singular name is intended to include the appropriate gender or number as the text of the within instrument may require.

IN WITNESS WHEREOF, the said Assignor has hereunto set its hand and seal or caused these presents to be signed by its proper officers and its seal, if any, to be hereto affixed this 9th day of May, 2022.

**ANCHOR ASSETS XVII, LLC, a California Limited Liability Company**

By: _Joshua Donaghy_

Joshua Donaghy

Title: Authorized Representative of Lighthouse Management, LLC, a California Limited Liability Company and Manager for Anchor Assets XVII, LLC

---

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

STATE OF CALIFORNIA
COUNTY OF VENTURA

On 5/9/2022 , before me, DINA M. TAYLOR , notary public personally appeared JOSHUA DONAGHY who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(This area for official notary seal)

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal,

_Dina M. Taylor_

Notary Public commissioned for said County and State

DINA M. TAYLOR
Notary Public - California
Los Angeles County
Commission # 2328509
My Comm. Expires Jun 13, 2024

PREPARED BY:
ANCHOR LOANS, L.P.
ONE BAXTER WAY, STE. 220
THOUSAND OAKS, CA 91362

# Exhibit 4

**Fill in this information to identify the case:**

Debtor name _Viet Ideas LLC_

United States Bankruptcy Court for the: _Central_ District of _California_
(State)

Case number (If known): _8:23-bk-11642_

☐ Check if this is an
amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

12/15

---

**Part 1:** **Summary of Assets**

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B* .................................................................................... $ 5,500,000.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B* .................................................................................. $ 0.00

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B* .................................................................................... $ 5,500,000.00

---

**Part 2:** **Summary of Liabilities**

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D* ............................ $ 5,544,445.00

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ...................................... $ 0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ................ + $ 0.00

4. **Total liabilities** ...............................................................................................................
   Lines 2 + 3a + 3b $ 5,544,445.00

---

**Fill in this information to identify the case:**

Debtor name **Viet Ideas LLC**

United States Bankruptcy Court for the: **Central** _____ District of **CA**
_____ (State)

Case number (If known): **8:23-bk-11642-TA**

☐ Check if this is an
amended filing

---

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☑ No. Go to Part 2.
☐ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

**2. Cash on hand** ............................................................................................................ $_____

**3. Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. _____ | _____ | ___ ___ ___ ___ | $_____ |
| 3.2. _____ | _____ | ___ ___ ___ ___ | $_____ |

**4. Other cash equivalents** *(Identify all)*

| 4.1. _____ | $_____ |
|---|---|
| 4.2. _____ | $_____ |

**5. Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$_____ 0.00

| Part 2: | Deposits and prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**7. Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

| 7.1. _____ | $_____ |
|---|---|
| 7.2. _____ | $_____ |

---

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|---|---|---|---|
| | Name | | |

---

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

   Description, including name of holder of prepayment

   8.1. _____    $ _____

   8.2. _____    $ _____

9. **Total of Part 2.**

   Add lines 7 through 8. Copy the total to line 81.    $ _____ 0.00

---

## Part 3: Accounts receivable

10. **Does the debtor have any accounts receivable?**

    ☑ No. Go to Part 4.

    ☐ Yes. Fill in the information below.

    **Current value of debtor's interest**

11. **Accounts receivable**

    11a. 90 days old or less: _____ – _____ = .......→    $ _____
    face amount                doubtful or uncollectible accounts

    11b. Over 90 days old: _____ – _____ = .......→    $ _____
    face amount              doubtful or uncollectible accounts

12. **Total of Part 3**

    Current value on lines 11a + 11b = line 12. Copy the total to line 82.    $ _____ 0.00

---

## Part 4: Investments

13. **Does the debtor own any investments?**

    ☑ No. Go to Part 5.

    ☐ Yes. Fill in the information below.

    | | Valuation method used for current value | Current value of debtor's interest |
    |---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

    Name of fund or stock:

    14.1. _____    _____    $ _____

    14.2. _____    _____    $ _____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

    Name of entity:                          % of ownership:

    15.1. _____    _____ %    _____    $ _____

    15.2. _____    _____ %    _____    $ _____

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

    Describe:

    16.1. _____    _____    $ _____

    16.2. _____    _____    $ _____

17. **Total of Part 4**

    Add lines 14 through 16. Copy the total to line 83.    $ _____ 0.00

---

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|---|---|---|---|
| | Name | | |

## Part 5: Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**
- ☑ No. Go to Part 6.
- ☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 20. **Work in progress** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 21. **Finished goods, including goods held for resale** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| 22. **Other inventory or supplies** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**

    Add lines 19 through 22. Copy the total to line 84.

    $ 0.00

24. **Is any of the property listed in Part 5 perishable?**
- ☐ No
- ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
- ☐ No
- ☐ Yes. Book value _____ Valuation method _____ Current value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**
- ☑ No. Go to Part 7.
- ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| 29. **Farm animals** Examples: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $_____ | | $_____ |

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|--------|----------------|------------------------|------------------|
|        | Name           |                        |                  |

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$ _____ 0.00

**34. Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

    ☐ No

    ☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____ Valuation method _____ Current value $_____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|-------------|-----------------------------------------------------------------|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|-------------------------------------------------------|-----------------------------------------|------------------------------------|
| **39. Office furniture** | | | |
| _____ | $_____ | _____ | $_____ |
| **40. Office fixtures** | | | |
| _____ | $_____ | _____ | $_____ |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| _____ | $_____ | _____ | $_____ |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 _____ | $_____ | _____ | $_____ |
| 42.2 _____ | $_____ | _____ | $_____ |
| 42.3 _____ | $_____ | _____ | $_____ |

**43. Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$ _____ 0.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

Debtor   __Viet Ideas LLC_____    Case number (if known) __8:23-bk-11642-TA__
Name

---

## Part 8:  Machinery, equipment, and vehicles

46.  **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.  Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 _____ | $_____ | _____ | $_____ |
| 47.2 _____ | $_____ | _____ | $_____ |
| 47.3 _____ | $_____ | _____ | $_____ |
| 47.4 _____ | $_____ | _____ | $_____ |
| **48.  Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 _____ | $_____ | | $_____ |
| 48.2 _____ | $_____ | | $_____ |
| **49.  Aircraft and accessories** | | | |
| 49.1 _____ | $_____ | | $_____ |
| 49.2 _____ | $_____ | | $_____ |
| **50.  Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| _____ | $_____ | | $_____ |

51.  **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

$_____ 0.00

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|---|---|---|---|
| | Name | | |

## Part 9: Real property

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 19222 Valley Drive, Villa Park, | _____ | $_____ | _____ | $ 5,500,000.00 |
| 55.2 CA 92861 | _____ | $_____ | _____ | $_____ |
| 55.3 _____ | _____ | $_____ | _____ | $_____ |
| 55.4 _____ | _____ | $_____ | _____ | $_____ |
| 55.5 _____ | _____ | $_____ | _____ | $_____ |
| 55.6 _____ | _____ | $_____ | _____ | $_____ |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

| $ 5,500,000.00 |
|---|

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☑ Yes

## Part 10: Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets**<br>_____ | $_____ | | $_____ |
| **61. Internet domain names and websites**<br>_____ | $_____ | | $_____ |
| **62. Licenses, franchises, and royalties**<br>_____ | $_____ | | $_____ |
| **63. Customer lists, mailing lists, or other compilations**<br>_____ | $_____ | | $_____ |
| **64. Other intangibles, or intellectual property**<br>_____ | $_____ | | $_____ |
| **65. Goodwill**<br>_____ | $_____ | | $_____ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

| $ 0.00 |
|---|

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|---|---|---|---|
| | Name | | |

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?
- ☐ No
- ☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☐ No
- ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

## Part 11:    All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.
- ☑ No. Go to Part 12.
- ☐ Yes. Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|

71. **Notes receivable**
Description (include name of obligor)
_____  Total face amount − doubtful or uncollectible amount = ➔ $_____

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)
_____ Tax year _____ $_____
_____ Tax year _____ $_____
_____ Tax year _____ $_____

73. **Interests in insurance policies or annuities**
_____ $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
_____ $_____
Nature of claim _____
Amount requested $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**
_____ $_____
Nature of claim _____
Amount requested $_____

76. **Trusts, equitable or future interests in property**
_____ $_____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
_____ $_____
_____ $_____

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.    $ 0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642-TA |
|---|---|---|---|
| | Name | | |

---

**Part 12:**  **Summary**

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ............................→ | | $ 5,500,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........91a. | $ 0.00 | + 91b. $ 5,500,000.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. .................................................................... $ 5,500,000.00

**Fill in this information to identify the case:**

Debtor name  Viet Ideas LLC

United States Bankruptcy Court for the:  Central    District of  CA
                                                          (State)

Case number (If known):  8:23-bk-11642

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

### Part 1:    List Creditors Who Have Secured Claims

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|

**2.1**

Creditor's name
Anchor Loans LP

Creditor's mailing address
1 Baxter Way Ste 220
Thousand Oaks, CA 91362

Creditor's email address, if known

Date debt was incurred  4/29/2022
Last 4 digits of account number  ___ ___ ___ ___

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Specify each creditor, including this creditor, and its relative priority.
2.1, 2.2, 2.3, 2.4

Describe debtor's property that is subject to a lien
19222 Valley Drive, Villa Park, CA 92861

Describe the lien

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

$ 3,650,501.00    $ 5,500,000.00

**2.2**

Creditor's name
Chi Phung Luu To

Creditor's mailing address
5412 Old Pirate Drive
Huntington Beach, CA 92646

Creditor's email address, if known

Date debt was incurred  5/10/2022
Last 4 digits of account number  ___ ___ ___ ___

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Have you already specified the relative priority?
  ☐ No. Specify each creditor, including this creditor, and its relative priority.

  ☑ Yes. The relative priority of creditors is specified on lines 2.1

Describe debtor's property that is subject to a lien
19222 Valley Drive, Villa Park, CA 92861

Describe the lien

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

$ 876,444.00    $ 5,500,000.00

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    $ 5,544,445.00

| Debtor | Viet Ideas LLC | Case number (if known) | 8:23-bk-11642 |
|---|---|---|---|
| | Name | | |

## Part 1: Additional Page

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

**2.7** Creditor's name

Green Lotus Group LLC

Creditor's mailing address

8892 Cliffside Drive
Hunting Beach, CA 92646

Creditor's email address, if known

Date debt was incurred    12/15/2022

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
- [ ] No
- [x] Yes. Have you already specified the relative priority?
  - [ ] No. Specify each creditor, including this creditor, and its relative priority.
  - [x] Yes. The relative priority of creditors is specified on lines 2.1

Describe debtor's property that is subject to a lien

19222 Valley Drive, Villa Park, CA 92861

$ 517,500.00    $ 550,000,000.0

Describe the lien

Is the creditor an insider or related party?
- [ ] No
- [x] Yes

Is anyone else liable on this claim?
- [ ] No
- [x] Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [x] Disputed

---

**2.4** Creditor's name

Hanh Huynh

Creditor's mailing address

18520 Callens Cir
Fountain Valley, CA 92708

Creditor's email address, if known

Date debt was incurred    2/21/2023

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
- [ ] No
- [x] Yes. Have you already specified the relative priority?
  - [ ] No. Specify each creditor, including this creditor, and its relative priority.
  - [x] Yes. The relative priority of creditors is specified on lines 2.1

Describe debtor's property that is subject to a lien

19222 Valley Drive, Villa Park, CA 92861

$ 500,000.00    $ 5,500,000.00

Describe the lien

Is the creditor an insider or related party?
- [x] No
- [ ] Yes

Is anyone else liable on this claim?
- [ ] No
- [x] Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [x] Disputed

---

Fill in this information to identify the case and this filing:

Debtor Name __Viet Ideas LLC__

United States Bankruptcy Court for the: __Central__    District of __CA__
                                                                    (State)

Case number (if known): __8:23-bk-11642__

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☑ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☑ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☑ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☑ Schedule H: Codebtors (Official Form 206H)

☑ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐ Amended Schedule ____

☐ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __8/17/2023__       X _____       NGAN TRAN as attorney
              MM / DD / YYYY         Signature of individual signing on behalf of debtor    in fact for TUONG MINH
                                                                                              NGUYEN

_____
Printed name

_____
Position or relationship to debtor

# Exhibit 5

**APPRAISER DECLARATION**

I,  Steven A. Strom _____  declare as follows:
   *(print name of declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.

2.  I hold a Real Estate Appraiser License in the State of California _____ as a:
   - ☐ Trainee Real Estate Appraiser      ☐ Residential Real Estate Appraiser
   - ☐ Certified Residential Real Estate Appraiser   ☑ Certified General Real Estate Appraiser
   - ☐ Other (specify): _____
       - ☑ Certificate #  AR027644 _____   ☐ License # _____

3.  ☐ I am employed by _____
                                *(name of employer)*
      which is located at _____ .
                                *(address)*
    ☑ I am self-employed.

4.  At the request of   Anchor Loans, LP _____
                          *(customer)*
    I performed an appraisal of the following:
    ☑ Real Property;    ☐ Manufactured/Mobile Home in Park;
    located at:  19222 Valley Dr., Villa Park, CA 92861 _____ .
                    *(address or location)*

5.  Based on my professional opinion, I estimated the
    ☑ Market Value of the property;
    ☐ _____ of the property;
       *(specify other value basis)*
    as of  10/11/2023 _____ to be $  4,515,000 _____ .
           *(date of valuation)*              *(value)*

6.  A true and correct copy of the appraisal report containing my valuation opinion is attached hereto. In the course of preparing the appraisal report, I followed the practices and procedures required of my profession in determining the value of the property.

I declare under penalty of perjury under the laws of the State of California _____ and the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on  10/11/2023 _____  at  Fountain Valley, CA _____ .
              *(date)*                            *(city and state)*

Steven A. Strom _____        _____
   *(print declarant's name)*                *(signature of declarant)*

# Exterior-Only Inspection Residential Appraisal Report

File # 919794

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | | | |
|---|---|---|---|---|
| Property Address | 19222 Valley Dr | City Villa Park | State CA | Zip Code 92861 |
| Borrower VIET IDEAS, LLC | | Owner of Public Record VIET IDEAS, LLC | County Orange | |

Legal Description N-TRACT: 7244 BLOCK: LOT: 7

| Assessor's Parcel # 372-351-15 | Tax Year 2022 | R.E. Taxes $ 28,665 |
|---|---|---|

| Neighborhood Name Villa Park | Map Reference 11244 | Census Tract 0758.09 |
|---|---|---|

| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | ☐ PUD | HOA $ 0 | ☐ per year ☐ per month |
|---|---|---|---|---|

| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | |
|---|---|---|

| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | |
|---|---|

Lender/Client Anchor Loans, LP    Address One Baxter Way #220, Thousand Oaks, CA 91362

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).    MLS

## CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

| Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) |
|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | | One-Unit 85 % | |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | Low 2,610 | 10 | | 2-4 Unit 5 % | |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | High 5,300 | 50 | | Multi-Family 5 % | |
| | | | | | | Pred. 4,350 | 15 | | Commercial 5 % | |

Neighborhood Boundaries 91 Freeway to the North, Fairmont Blvd. to the East, Chapman Ave. to the South, 55 Freeway to the West.    Other %

Neighborhood Description The subject's neighborhood is mostly composed of older and newer average to good quality detached single family residences. Most properties are adequately to well maintained. Local shopping, transportation, parks, and employment centers are in close proximity.

Market Conditions (including support for the above conclusions)    See attached 1004MC addendum.

## SITE

| Dimensions See Plat Map | Area 20,190 sf | Shape Rectangular | View N;Res; |
|---|---|---|---|

| Specific Zoning Classification R1 | Zoning Description Single Family Residence |
|---|---|

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe    The highest and best use is as is.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 06059C0158J    FEMA Map Date 12/03/2009

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

The subject has level lot with 100% utility. No easements or encroachments noted. There were NO adverse conditions noted.

## IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner ☒ Other (describe) Drive By

Data Source for Gross Living Area Public Records

| General Description | | Foundation | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | Concrete Slab ☒ ☐ Crawl Space | | ☒ FWA ☐ HWBB | | Fireplace(s) # 1 | | ☐ None | |
| # of Stories 2 | | Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | | ☒ Driveway # of Cars 3 | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Partial Basement ☐ Finished | | ☐ Other Fuel Gas | | ☒ Patio/Deck Patio | | Driveway Surface Concrete | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Exterior Walls Stucco/Avg | | ☒ Central Air Conditioning | | ☒ Porch Porch | | ☒ Garage # of Cars 3 | |
| Design (Style) Custom | | Roof Surface Comp/Avg | | ☐ Individual | | ☐ Pool Pool/Spa | | ☐ Carport # of Cars 0 | |
| Year Built 2008 | | Gutters & Downspouts Alum/Avg | | ☐ Other | | ☒ Fence Fenced | | ☒ Attached ☐ Detached | |
| Effective Age (Yrs) 12 | | Window Type Alum/Avg | | | | ☐ None | | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 14 Rooms    7.2 Bedrooms    Bath(s)    9,004 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)    None noted.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C2;Subject from exterior is in above average condition; with upgraded improvements and amenities. At the clients request and based on the exterior condition viewed in the drive by inspection and MLS photos for lisitng; an extraordinary assumption is made that the subject is in C2 condition. Heating/cooling systems, appliances and other non visible features are assumed to be present as per the clients instructions.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**   File # 919794

There are **3** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **3,788,000** to $ **6,450,000** .
There are **13** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **3,650,000** to $ **5,300,000** .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 19222 Valley Dr Villa Park, CA 92861 | 5081 E Copa De Oro Dr Anaheim Hills, CA 92807 | | 4721 E Copa De Oro Dr Anaheim Hills, CA 92807 | | 18541 Valley Dr Villa Park, CA 92861 | |
| Proximity to Subject | | 1.17 miles NW | | 1.14 miles NW | | 0.65 miles SW | |
| Sale Price | $ | | $ 4,250,000 | | $ 4,500,000 | | $ 5,300,000 |
| Sale Price/Gross Liv. Area | $ 460.91 sq.ft. | $ 517.35 sq.ft. | | $ 459.18 sq.ft. | | $ 513.12 sq.ft. | |
| Data Source(s) | | MLS#TR22245072;DOM 143 | | MLS#PW22165107;DOM 397 | | MLS#23262795;DOM 27 | |
| Verification Source(s) | | Doc#91548 | | Doc#240419 | | Doc#131612 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s04/23;c04/23 | | s10/23;c09/23 | | s06/23;c05/23 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 20,190 sf | 1.21 ac | 0 | 34,848 sf | -15,000 | 39,335 sf | -20,000 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;Custom | DT2;Custom | | DT2;Custom | | DT2;Custom | |
| Quality of Construction | Q2 | Q2 | | Q2 | | Q2 | |
| Actual Age | 15 | 30 | +15,000 | 32 | +17,000 | 40 | 0 |
| Condition | C2 | C2 | | C3 | +250,000 | C2 | -250,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | 0 | Total / Bdrms. / Baths | 0 | Total / Bdrms. / Baths | 0 |
| Room Count | 14 / 7 / 7.2 | 13 / 6 / 6.2 | +15,000 | 13 / 5 / 5.2 | +30,000 | 15 / 8 / 6.2 | +15,000 |
| Gross Living Area | 9,004 sq.ft. | 8,215 sq.ft. | +276,150 | 9,800 sq.ft. | -278,600 | 10,329 sq.ft. | -463,750 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3ga3dw | 5ga5dw | -20,000 | 4ga4dw | -10,000 | 4ga4dw | -10,000 |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Bonus Room | None | None | | None | | None | |
| Pool/Spa | Pool/Spa | Pool/Spa | | Pool/Spa | | Pool/Spa | |
| Hardscaping | Hardscaping | Tennis Court | 0 | Hardscaping | | Hardscaping | |
| Net Adjustment (Total) | | ☒ + - | $ 286,150 | + ☒ - | $ -6,600 | + ☒ - | $ -728,750 |
| Adjusted Sale Price | | Net Adj. 6.7 % | | Net Adj. 0.1 % | | Net Adj. 13.8 % | |
| of Comparables | | Gross Adj. 7.7 % | $ 4,536,150 | Gross Adj. 13.3 % | $ 4,493,400 | Gross Adj. 14.3 % | $ 4,571,250 |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

Realist and MLS were utilized in researching the sale or transfer history of subject and all comparables.

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Realist/MLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Realist/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/21/2022 | | | |
| Price of Prior Sale/Transfer | $4,150,000 | | | |
| Data Source(s) | Realist | Realist | Realist | Realist |
| Effective Date of Data Source(s) | 09/27/2023 | 09/27/2023 | 09/27/2023 | 09/27/2023 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Subject sold on 02/21/2022 for $4,150,000; recent increase in value due to increasing property values in subject market & recent updating.

Summary of Sales Comparison Approach   All comparables are located in the same market area. Adjustments are based on current market data/paired sales study analysis. Adjustments made for condition/features are applied per exterior inspection and MLS description. Comparables used are all similar in amenities, market location, design/appeal, effective age, lot utility. Subject value is bracketed and placed in the value range. Comparables 1-4 represent the As-is value. Comparable 1 is located on a rear down sloped lot; limited lot utility; similar lot utility as subject; no lot adjustments warranted.

Indicated Value by Sales Comparison Approach $ 4,515,000

Indicated Value by: Sales Comparison Approach $ **4,515,000**   Cost Approach (if developed) $ **4,515,456**   Income Approach (if developed) $

In the final analysis most consideration was given to the market data approach as it best represents the actions of buyers and sellers in an open market. The cost approach was not utilized at the request of the lender. The income approach was NOT considered in the final analysis.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ **4,515,000** , as of **10/11/2023** , which is the date of inspection and the effective date of this appraisal.

Exterior-Only Inspection Residential Appraisal Report    File # 919794

**ADDITIONAL COMMENTS**

Extraordinary Assumptions: The appraisal report requires multiple extraordinary assumptions:

1. The "As Is" value is be based upon either a C2, C3, or C4 condition rating. The appropriate rating is based upon photos, if available, appraiser's MLS and market research, and an exterior observation of the subject property.

2. An extraordinary assumptions also made for the "After Repair Value" assuming the total repairs/rehab has been completed and the subject's "After Repairs" condition rating is deemed C2 or C3 for renovations or "C1" for new construction.

3. The quality, style and amenities of the proposed renovation or new construction is similar and competitive to the quality, style and amenities of the competitive properties in the subjects market area and the sales data utilized in the report. The value can be drastically impacted by the use of inferior materials that do not meet market expectation. The client is aware of this risk and the appraisal is only for the exclusive use of the client, there are no other intended users due to the clients limited defined scope of work.

"As is" : The Scope of Work did not include an interior inspection of the subject property. All information provided is based on drive-by inspection, market data services (such as Realist, MLS, or any other informational sources) the appraiser has deemed appropriate in order to provide a credible report unless specified in the engagement email. The appraiser has reviewed this information and provided condition and quality determinations based on the UAD definitions provided within this report: Q1 to Q6 and C1 to C6.

"As Repaired Value": At the client request further research as determined as an repaired value and completed under the extraordinary assumption that the subject property has been updated and or remodeled. This assumption includes that the subject property has been completely remodeled in a workmanlike manner to the standards as required within the building codes and permits of the certain county and/or area neighborhood zoning and use codes. The client if further advised that the use of extraordinary assumption may impact the final reconciliation of the subject property. If these assumptions are found to be inaccurate the appraiser reserves the right to re-evaluate based on additional supported information which result in an alternative (lower or higher) reconciled value. The appraiser has attempted to provide the most recent up to date data on the subject property and all comparable sales utilized within this report. The appraiser makes no warranties or guarantees expressed or implied as to building materials, quality and/or condition. All information has been provided by third party sources with secondary verification made where possible.

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The site value is based on the extraction method.

The physical depreciation can be derived by the Age-Life method which is calculated by dividing the effective age by total economic life (100 years.) Due to the difficulty in determining the physical depreciation the cost approach is NOT considered the most reliable approach to value.

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 2,030,000 |
|---|---|---|---|---|---|---|
| Source of cost data | Marshall & Swift/Building-cost.net | | DWELLING | 9,004 Sq.Ft. @ $ 300.00 | =$ | 2,701,200 |
| Quality rating from cost service | Good | Effective date of cost data | Current | 0 Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Porch/Patio/Hardscape/Pool/Spa | | =$ | 75,000 |
| Due to the difficulty in determining the physical depreciation, and the | | | Garage/Carport | 600 Sq.Ft. @ $ 50.00 | =$ | 30,000 |
| limited availability of land sales thatare similar to subject, the cost | | | Total Estimate of Cost-New | | =$ | 2,806,200 |
| approach is NOT considered the most reliable approach to value. The | | | Less | Physical | Functional | External |
| site value is greater than 30% of the indicated value of the cost | | | Depreciation | 336,744 | =$( | 336,744) |
| approach but this is typical for this area. | | | Depreciated Cost of Improvements | | =$ | 2,469,456 |
| | | | "As-is" Value of Site Improvements | | =$ | 16,000 |
| Estimated Remaining Economic Life (HUD and VA only) | 88 Years | | INDICATED VALUE BY COST APPROACH | | =$ | 4,515,456 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?    Yes    No    Unit type(s)    Detached    Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    Yes    No    If Yes, date of conversion

Does the project contain any multi-dwelling units?    Yes    No    Data Source(s)

Are the units, common elements, and recreation facilities complete?    Yes    No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    Yes    No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Exterior-Only Inspection Residential Appraisal Report   File # 919794

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:   The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE:   The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:   The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:   The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations will be performed in a professional manner.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

APPRAISER'S CERTIFICATION:           The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Exterior-Only Inspection Residential Appraisal Report   File #   919794

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves you or one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:          The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| **Steven A Strom** | |
| Signature | Signature |
| Name   Steven A Strom | Name |
| Company Name   Appraisals 2-Day | Company Name |
| Company Address   8603 Shadow Lane | Company Address |
| Fountain Valley, CA 92708 | |
| Telephone Number   714-499-6409 | Telephone Number |
| Email Address   33strom@gmail.com | Email Address |
| Date of Signature and Report   10/12/2023 | Date of Signature |
| Effective Date of Appraisal   10/11/2023 | State Certification # |
| State Certification #   AR027644 | or State License # |
| or State License # | State |
| or Other (describe)   State # | Expiration Date of Certification or License |
| State   CA | |
| Expiration Date of Certification or License   05/23/2024 | SUBJECT PROPERTY |

| | |
|---|---|
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect exterior of subject property |
| 19222 Valley Dr | ☐ Did inspect exterior of subject property from street |
| Villa Park, CA 92861 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   4,515,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name   No AMC | ☐ Did not inspect exterior of comparable sales from street |
| Company Name   Anchor Loans, LP | ☐ Did inspect exterior of comparable sales from street |
| Company Address   One Baxter Way #220, Thousand Oaks, CA | Date of Inspection |
| 91362 | |
| Email Address | |

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exterior-Only Inspection Residential Appraisal Report    File # 919794

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 19222 Valley Dr | 4831 E Copa De Oro Dr | | | | | |
| | Villa Park, CA 92861 | Anaheim Hills, CA 92807 | | | | | |
| Proximity to Subject | | 1.19 miles NW | | | | | |
| Sale Price | $ | $ 4,498,888 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 460.91 sq.ft. | $ 473.42 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS#PW23047540;DOM 241 | | | | | |
| Verification Source(s) | | Pending Sale | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | c09/23 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 20,190 sf | 30,492 sf | -10,500 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT2;Custom | DT2;Custom | | | | | |
| Quality of Construction | Q2 | Q2 | | | | | |
| Actual Age | 15 | 33 | +18,000 | | | | |
| Condition | C2 | C2 | | | | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | 0 | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 14 / 7 / 7.2 | 10 / 6 / 8.2 | -15,000 | | | | |
| Gross Living Area | 9,004 sq.ft. | 9,503 sq.ft. | -174,650 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 3ga3dw | 4ga4dw | -10,000 | | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | | | | |
| Bonus Room | None | None | | | | | |
| Pool/Spa | Pool/Spa | Pool/Spa | | | | | |
| Hardscaping | Hardscaping | Basketball Court | 0 | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -192,150 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 4.3 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 5.1 % | $ 4,306,738 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 02/21/2022 | | | |
| Price of Prior Sale/Transfer | $4,150,000 | | | |
| Data Source(s) | Realist | Realist | | |
| Effective Date of Data Source(s) | 09/27/2023 | 09/27/2023 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    None noted.

Analysis/Comments

Form 2055UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

File No.    919794

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form UADDEFINE - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Subject Photo Page**

| Borrower | VIET IDEAS, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |



**Subject Front**

19222 Valley Dr
Sales Price
G.B.A.
Age/Yr.Blt.      15



**Subject Side**



**Subject Side**

Subject Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | VIET IDEAS, LLC | | | | | |
| Property Address | 19222 Valley Dr | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | |



**Subject Street**

19222 Valley Dr
Sales Price
G.L.A.          9,004
Tot. Rooms      14
Tot. Bedrms.    7
Tot. Bathrms.   7.2
Location        N;Res;
View            N;Res;
Site            20,190 sf
Quality         Q2
Age             15



**Subject Street**



**Subject Address**

**Comparable Photo Page**

| Borrower | VIET IDEAS, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |



### Comparable 1
5081 E Copa De Oro Dr
Sales Price    4,250,000
G.B.A.
Age/Yr.Blt.    30



### Comparable 2
4721 E Copa De Oro Dr
Sales Price    4,500,000
G.B.A.
Age/Yr.Blt.    32



### Comparable 3
18541 Valley Dr
Sales Price    5,300,000
G.B.A.
Age/Yr.Blt.    40

## Comparable Photo Page

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | VIET IDEAS, LLC | | | | | | |
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |



### Comparable 4

4831 E Copa De Oro Dr
Sales Price        4,498,888
G.B.A.
Age/Yr.Blt.        33

### Comparable 5

Sales Price
G.B.A.
Age/Yr.Blt.

### Comparable 6

Sales Price
G.B.A.
Age/Yr.Blt.

Market Conditions Addendum to the Appraisal Report    File No. 919794

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 19222 Valley Dr | City | Villa Park | State | CA | ZIP Code | 92861 |
|---|---|---|---|---|---|---|---|

| Borrower | VIET IDEAS, LLC |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 7 | 3 | 3 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 1.17 | 1.00 | 1.00 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | n/a | n/a | 3 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | n/a | n/a | 3.0 | ☐ Declining | ☒ Stable | ☐ Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 4,219,000 | 4,280,000 | 4,370,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 35 | 37 | 35 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 4,167,000 | 4,215,000 | 4,297,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | n/a | n/a | 31 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 102% | 102% | 102% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).     Sellers typically pay 0-2% for buyer's closing costs.

Are foreclosure (REO sales) a factor in the market?    ☐ Yes    ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).
There is evidence of REO/Forclosure Sales. But this does not appear to be a major factor.

Cite data sources for above information.    The CRMLS MLS was the data source used to complete the Market Conditions Addendum.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
Closed, active, backup and pending sales were researched within the subject's market area to determine the appraiser's conclusions.

*MARKET RESEARCH & ANALYSIS*

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | | Project Name: | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?    ☐ Yes    ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

*CONDO/CO-OP PROJECTS*

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Steven A Strom | Supervisory Appraiser Name | |
| Company Name | Appraisals 2-Day | Company Name | |
| Company Address | 8603 Shadow Lane, Fountain Valley, CA 92708 | Company Address | |
| State License/Certification # | AR027644    State CA | State License/Certification # | State |
| Email Address | 33strom@gmail.com | Email Address | |

*APPRAISER*

| Freddie Mac Form 71    March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC    March 2009 |
|---|---|---|

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**HUDSON INSURANCE COMPANY**
100 William Street, 5th Floor
New York, NY 10038



### REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE
### POLICY DECLARATIONS

**NOTICE: THIS IS A "CLAIMS MADE AND REPORTED" POLICY. THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR AUTOMATIC EXTENDED REPORTING PERIOD.**

**THIS POLICY MAY CONTAIN PROVISIONS WHICH LIMIT THE AMOUNT OF CLAIM EXPENSES THE INSURER IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. CLAIM EXPENSES SHALL BE SUBJECT TO ANY DEDUCTIBLE AMOUNT. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY STATED IN ITEM 4. OF THE DECLARATIONS. PLEASE READ YOUR POLICY CAREFULLY.**

### PLEASE READ THIS POLICY CAREFULLY.

| | | | | | |
|---|---|---|---|---|---|
| **Policy Number:** | PRA-3AX-1000532 | | **Renewal of:** | PRA-3AX-1000307 | |

1. **Named Insured:**    Steven Strom DBA Appraisals 2-Day

2. **Address:**    8603 Shadow Lane
   Fountain Valley, CA 92708

3. **Policy Period:**    **From:** February 4, 2023    **To:** February 4, 2024

   12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above

4. **Limit of Liability**    Each **Claim**    Policy Aggregate

   **Damages** Limit of Liability    **A.** $1,000,000    **B.** $2,000,000
   **Claims Expense** Limit of
   Liability    **C.** $1,000,000    **D.** $2,000,000

5. **Deductible** (Inclusive of **Claims Expenses**):

   **5A.** $ 500    Each **Claim**    **5B.** $ 1,000    Aggregate

6. **Policy Premium:** $774.00    **State Taxes/Surcharges:** $0.00

7. **Retroactive Date:** Full Prior Acts

8. **Notice to Company:** Notice of a **Claim** or Potential **Claim** should be sent to:
   Hudson Insurance Group

   100 William Street, 5th Floor
   New York, NY 10038

   Fax: 646-216-3786
   Email: hudsonclaims300@hudsoninsgroup.com

9. **A. Program Administrator:** Riverton Insurance Agency Corp.
   **B. Agent/Broker:** RCIM
   (707)934-4214

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York*

President    Secretary

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



Business, Consumer Services & Housing Agency

# BUREAU OF REAL ESTATE APPRAISERS
# REAL ESTATE APPRAISER LICENSE

**Steven A. Strom**

has successfully met the requirements for a license as a residential real estate appraiser in the State of
California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and
Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    AR 027644

Effective Date:    May 24, 2022
Date Expires:    May 23, 2024

*Loretta Dillon*
Loretta Dillon, Deputy Bureau Chief, BREA

3065266

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO SEE CHAIN LINK

**Plat Map**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | VIET IDEAS, LLC | | | | | | |
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |



| Borrower | VIET IDEAS, LLC | | | | File No. | 919794 |
|---|---|---|---|---|---|---|
| Property Address | 19222 Valley Dr | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code 92861 |
| Lender/Client | Anchor Loans, LP | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Appraisal Report (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Comments on Appraisal and Report Identification

Note any USPAP related issues requiring disclosure and any State mandated requirements:

Extraordinary Assumptions: The appraisal report requires multiple extraordinary assumptions:
1. The "As Is" value is be based upon either a C4, C5, or C6 condition rating. The appropriate rating is based upon photos, if available, appraiser's MLS and market research, and an exterior observation of the subject property.
2. An extraordinary assumptions also made for the "After Repair Value" assuming the total repairs/rehab has been completed and the subject's "After Repairs" condition rating is deemed C2 or C3 for renovations or "C1" for new construction.
3. The quality, style and amenities of the proposed renovation or new construction is similar and competitive to the quality, style and amenities of the competitive properties in the subjects market area and the sales data utilized in the report. The value can be drastically impacted by the use of inferior materials that do not meet market expectation. The client is aware of this risk and the appraisal is only for the exclusive use of the client, there are no other intended users due to the clients limited defined scope of work.

"As is" : The Scope of Work did not include an interior inspection of the subject property. All information provided is based on drive-by inspection, market data services (such as Realist, MLS, or any other informational sources) the appraiser has deemed appropriate in order to provide a credible report unless specified in the engagement email. The appraiser has reviewed this information and provided condition and quality determinations based on the UAD definitions provided within this report: Q1 to Q6 and C1 to C6.

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name: Steven A Strom | Name: |
| Steven Strom | |
| State Certification #: AR027644 | State Certification #: |
| or State License #: | or State License #: |
| State: CA  Expiration Date of Certification or License: 05/23/2024 | State:  Expiration Date of Certification or License: |
| Date of Signature and Report: 10/12/2023 | Date of Signature and Report: |
| Effective Date of Appraisal: 10/11/2023 | |
| Inspection of Subject: ☐ None ☐ Interior and Exterior ☒ Exterior-Only | Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only |
| Date of Inspection (if applicable): 10/11/2023 | Date of Inspection (if applicable): |

## Appraiser Independence Certification

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with.   This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.
- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of _____Anchor Loans, LP_____ , or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of _____Anchor Loans, LP_____ , influenced, or attempted to influence the development, reporting, result, or review of my appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that _____Anchor Loans, LP_____ has never participated in any of the following prohibited behavior in our business relationship:

1) Withholding or threatening to withhold timely payment or partial payment for an appraisal report;

2) Withholding or threatening to withhold future business with me, or demoting or terminating or threatening to demote or terminate me;

3) Expressly or impliedly promising future business, promotions, or increased compensation for myself;

4) Conditioning the ordering of my appraisal report or the payment of my appraisal fee or salary or bonus on the opinion, conclusion, or valuation to be reached, or on a preliminary value estimate requested from me;

5) Requesting that I provide an estimated, predetermined, or desired valuation in an appraisal report prior to the completion of the appraisal report, or requesting that I provide estimated values or comparable sales at any time prior to my completion of an appraisal report;

6) Provided me an anticipated, estimated, encouraged, or desired value for a subject property or a proposed or target amount to be loaned to the borrower, except that a copy of the sales contract for purchase transactions may be provided;

7) Provided to me, or my appraisal company, or any entity or person related to me as appraiser, appraisal company, stock or other financial or non-financial benefits;

8) Any other act or practice that impairs or attempts to impair my independence, objectivity, or impartiality or violates law or regulation, including, but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the USPAP.

| | |
|---|---|
| _[signature]_ | 10/12/2023 |
| Signature | Date |
| Steven A Strom | AR027644 |
| Appraiser's Name | State License or Certification # |
| Steven Strom | 05/23/2024                                    CA |
| State Title or Designation | Expiration Date of License or Certification      State |

19222 Valley Dr, Villa Park, CA 92861
Address of Property Appraised

05/13

Appraisals 2-Day (714) 499-6409

**FIRREA / USPAP ADDENDUM**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | VIET IDEAS, LLC | | | | | File No. | 919794 |
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |

**Purpose**

Valuation of As-Is.

**Scope of Work**

At the client's request an As-Is (AIV) value may have been determined within this report. The appraiser has utilized market data services such as Realist, MLS to provide the best most up to date information as possible based on an exterior drive-by.  A hypothetical condition has been assumed that the repairs, updates, and/or new construction has been completed for an ARV After Repair Value to be present.

**Intended Use / Intended User**

Intended Use:    The intended use of this appraisal report is for a mortgage finance transaction only. It is not intended for any other use.

Intended User(s):    The intended user of this appraisal report is the lender/client only. No other intended users are identified.

**History of Property**

Current listing information:    See appropriate sections of the report page 1.

Prior sale:    See appropriate sections of the UAD format report.

**Exposure Time / Marketing Time**

Reasonable exposure time for the subject property at the market value stated in this report is estimated at 40-100 days

**Personal (non-realty) Transfers**

None noted.

**Additional Comments**

I have performed services, as an appraiser regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment; as is and After repair value in 06/2022. The intended user of this appraisal report is the lender/client, this report is for a mortgage transaction only, it is not intended for any other use, subject to the stated scope of work, purpose of the appraisal, reporting requirements of this appraisal form, definition of market value, no additional intended users are identified by the appraiser.

1) AIR Statement: No employee, director, officer or agent of the lender, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender has influenced or attempted to influence the development, reporting, result or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner.

**Certification Supplement**

1.   This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.

2.   My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

| | | |
|---|---|---|
| Appraiser: Steven A Strom | Supervisory Appraiser: | |
| Signed Date: 10/12/2023 | Signed Date: | |
| Certification or License #: AR027644 | Certification or License #: | |
| Certification or License State: CA    Expires: 05/23/2024 | Certification or License State:    Expires: | |
| Effective Date of Appraisal: 10/11/2023 | Inspection of Subject: ☐ Did Not  ☐ Exterior Only  ☐ Interior and Exterior | |

Form FUA_LG2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**                                                    File No. 919794

| Borrower | VIET IDEAS, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |

**Appraisal Assignment Details**

**Due Date:** 10/13/2023
**Fee:** $400.00
**Loan:** #919794
**Address:** 19222 Valley Drive, Villa Park, CA 92861
**APN:** 06059-37235115
**Borrower(s)/DBA:** Nguyen, Tuong Minh dba: VIET IDEAS, LLC
**Lender:** Anchor Loans, LP

 **Client:** Anchor Loans, LP
   One Baxter Way, Suite 220
   Thousand Oaks, CA 91362

---

**Value Required: AS-IS**
**Transaction Type:** Other
**Appraisal Product:** 2055
**POC:** N/A
**Property Characteristics:** Main valued subject AS-IS: 9004 sq ft SFR, 7.0 + 7.2, on 20399.0 sq ft lot, built 2008, elevator, theater, gym, 3 car garage, pool/spa, larger rear cov'd patio area, BBQ area, expansive site hardscaping & landscaping.
**Future Plans:** As Is Flip
**Borrower Repairs:** $0
**Repairs Complete:** $147,000

*As Is Value opinion (AIV): $4,515,000

*As is value opinion is based on comparable sales 1-4

If made, any adjustments, including those for bathrooms, bedrooms and GLA, based on matched pair study analysis. All comparables are from the subject`s market area, similar in appeal, similar effective, similar lot utility.  As is Value (AIV) opinion was derived by weighted analysis of the comparable sales.

**Aerial Map**

| Borrower | VIET IDEAS, LLC | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19222 Valley Dr | | | | | | |
| City | Villa Park | County | Orange | State | CA | Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP | | | | | | |



Location Map

| | |
|---|---|
| Borrower | VIET IDEAS, LLC |
| Property Address | 19222 Valley Dr |
| City | Villa Park |
| County | Orange |
| State | CA |
| Zip Code | 92861 |
| Lender/Client | Anchor Loans, LP |



# Exhibit 6

| ONLINE PAYMENTS / SERVICES | AGENCY BILLING / COLLECTIONS | INVESTMENTS | PROPERTY TAX | INFO & CONTACT US | FINANCIAL REPORTS / STATISTICS | HOW DO I |
|---|---|---|---|---|---|---|

Treasurer-Tax Collector

🛒 View Cart ( Empty )

# TREASURER-TAX COLLECTOR

Treasurer-Tax Collector Home

Online Payments / eServices

Agency Billing / Collections

Investments

Property Tax

Information

Financial Reports / Statistics

How Do I

Resources

## MOST POPULAR

| | |
|---|---|
| Unsecured Tax Bill Reminder | Secured Tax Bill Reminder |
| Payment of Multiple Tax Parcels | Investment Report Subscription |
| Property Auctions | Property Tax Auction Subscription |
| View Prior Year Tax Bills | Change of Mailing Address Form |

## RESOURCES

| | |
|---|---|
| Top 20 Taxpayers | Installment Plans |
| Tax Sale Excess Proceeds | Important Dates |
| California Codes | Recorded Property Liens |
| Change of Mailing Address Form | Change of Ownership Forms |
| Assessment Appeals | Business Property Valuations |
| Tax Defaulted Properties | |

# Treasurer-Tax Collector

## Prior Year Secured and Supplemental Tax

There are delinquent taxes against the property. This page presents tax information on the TDN you have selected. Payments, corrections and/or other adjustments made today may not be reflected until after 2 days.

The amount below represents the amount due for prior year taxes only. In addition to this amount, there may be taxes due and payable from the current year roll. Current year secured and/or supplemental taxes may be viewed by clicking on the Back button of your browser.

Tax Default No.(TDN) :         23-003293

First Year of Delinquency:    2022

Status:                                     UNPAID

APN 372-351-15 location:    19222 E VALLEY DR



| TDN Parcels | Roll Year | Taxes | Basic Penalties | Cost | Add'l Penalties | Total |
|---|---|---|---|---|---|---|
| 372-351-15.00 | 2022 | $28,664.76 | $2,866.46 | $23.00 | $1,719.88 | $33,274.10 |
| 372-351-15.0100 | 2022 | $2,731.13 | $273.10 | $23.00 | $163.84 | $3,191.07 |
| 372-351-15.0200 | 2022 | $15,664.21 | $1,566.42 | $23.00 | $939.84 | $18,193.47 |
| Redemption Fee | | | | | | $15.00 |
| Other Fees | | | | | | $0.00 |
| Total Tax Amount | | | | | | $54,673.64 |
| (Less)Amount Paid | | | | | | ($0.00) |
| Total Tax Amount Due Now | | | | | | $54,673.64 |
| | | | | | | |
| Add Monthly Penalty If Not Paid by the End of The Month | | | | | | $705.89 |

Parcels indicated with * reflect unpaid second installments; they do not reflect unpaid first installments.

**Click on one of the button selections below to go to our secure** 🔒 **third-party processing vendor to complete the transaction. If you have an ACH Debit Block, please give your bank our ID# 9956000928.**

| Pay by eCheck (No Cost) | Pay by Credit Card (2.29% Service fee) | Pay by Debit Card (2.29% Service fee) |
|---|---|---|

Add to Cart

Information is current as of 10/27/2023.

PAY / VIEW TAX BILLS

SECURED TAX REMINDER SIGNUP

| ONLINE PAYMENTS / SERVICES | AGENCY BILLING / COLLECTIONS | INVESTMENTS | PROPERTY TAX | INFO & CONTACT US | FINANCIAL REPORTS / STATISTICS | HOW DO I |

Treasurer-Tax Collector

 View Cart ( Empty )

# TREASURER-TAX COLLECTOR

Treasurer-Tax Collector Home

Online Payments / eServices

Agency Billing / Collections

Investments

Property Tax

Information

Financial Reports / Statistics

How Do I

Resources

## MOST POPULAR

Unsecured Tax Bill Reminder

Secured Tax Bill Reminder

Payment of Multiple Tax Parcels

Investment Report Subscription

Property Auctions

Property Tax Auction Subscription

View Prior Year Tax Bills

Change of Mailing Address Form

## RESOURCES

Top 20 Taxpayers

Installment Plans

Tax Sale Excess Proceeds

Important Dates

California Codes

Recorded Property Liens

Change of Mailing Address Form

Change of Ownership Forms

Assessment Appeals

Business Property Valuations

Tax Defaulted Properties

**PAY / VIEW TAX BILLS**

**SECURED TAX REMINDER SIGNUP**

## Treasurer-Tax Collector

**Property Tax Information
FISCAL YEAR 2023-2024**

**To pay your property tax bill, click on the blue button below "Pay Online Now". Please note you will receive credit as of the date you submit your payment request electronically, however it will take 2 BUSINESS DAYS, for the payment status to be updated on our website.**

| | | |
|---|---|---|
| **Parcel No.** | 372-351-15 | View Original Bill    (See Bill Disclaimer) |
| **Property Location** | 19222 E VALLEY DR | |
| **Tax Rate Area** | 24-000 | |
| **Roll Type** | Secured | |



| Installments | Installment Payment Deadline | Status | Amount Due | Remarks |
|---|---|---|---|---|
| **First Installment** | 12/11/2023 | NOT PAID | $22,625.62 | Until 12/11/2023 |
| **Second Installment** | 04/10/2024 | NOT PAID | $22,625.62 | Until 04/10/2024 |
| **Total Due and Payable** | | | $45,251.24 | |

**You will receive same day credit for your transaction,
THE INFORMATION IS CURRENT AS OF TODAY'S DATE.**

*Save postage and "Go Green Electronically" by using our no cost eCheck payment option. Or pay your taxes using your VISA, MasterCard, American Express or Discover card either on-line or by telephone at 714-834-3411. Payments made by credit or debit card will be charged a 2.29% service fee (minimum charge of $1.95).*



The amount above represents the amount due for the current tax year only, and includes any corrections, penalties and fees not reflected in your original tax bill. You may go back to the previous page for any prior year information. For any questions, please call us at (714) 834-3411 or send an email to ttcinfo@ttc.ocgov.com between 9 a.m. and 5 p.m.

**Payment Summary**

| Installments | Date Paid | Amount Paid | Remarks |
|---|---|---|---|
| First Installment | | $0.00 | |
| Second Installment | | $0.00 | |
| **Total Amt Paid** | | $0.00 | |

**Assessed Values and Exemptions**

| Description | Full Value | Computed Tax |
|---|---|---|
| Land | $2,314,857 | |
| Mineral Rights | $0 | |
| Improvements | $1,918,143 | |
| Personal Property | $0 | |
| Others | $0 | |
| **Total Values** | **$4,233,000** | |
| **(Less) Exemptions** | | |
| | $0 | |
| **Total Net Taxable Value** | $4,233,000 | |
| **Total Due and Payable** | | |

**Tax Consolidation on Secured Property Tax Bill**

Privacy • Terms

For a detailed breakdown of your proposed tax amount on this tax bill, click on the link below. If you have further questions, call our office at 714-834-3411 (9:00 am to 5:00 pm M-F).

*Click Here for Detailed Information on What Makes Up Your Taxes!*

## PROPERTY TAX FAQS



*Save postage and "Go Green Electronically" by using our no cost eCheck payment option. Or pay your taxes using your VISA, MasterCard, American Express or Discover card either on-line or by telephone at 714-834-3411. Payments made by credit or debit card will be charged a 2.29% service fee (minimum charge of $1.95).*

OR

Please make your check payable to the County of Orange and mail your payments to:

County of Orange
ATTN: Orange County Tax Collector
P.O. Box 1438
Santa Ana, CA 92702-1438

Information is current as of 10/27/2023 for the current year roll.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
455 S. Figueroa St. 31ˢᵗ Fl., Los Angeles CA 90071

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/02/2023    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) 11/02/2023    , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 11/02/2023    , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/02/2023 | Glenn C. Kelble | /s/ Glenn C. Kelble |
| *Date* | *Printed name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 12                                    **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT
### Continuation Page

## 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): (continued)

Glenn C. Kelble    glenn@ksgklaw.com
Melissa Davis Lowe    mlowe@shulmanbastian.com, avernon@shulmanbastian.com
Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Stella K Park    spark@parkandzheng.com, yzheng@parkandzheng.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

## 2. SERVED BY UNITED STATES MAIL: (continued)

**Judge's Copy**

Hon. Theodor C. Albert
411 West Fourth Street, Suite 5085
Santa Ana, CA 92701-4593

**Debtor's Attorney**

Stella K Park
Park & Zheng
6 Venture, Suite 270
Irvine, CA 92618

**Debtor**

Viet Ideas LLC
10502 Villa Del Cerro
Santa Ana, CA 92705

**Chapter 7 Trustee**

Richard A Marshack
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

**Lienholders**

Chi Phung Luu To
5412 Old Pirate Drive
Huntington Beach, CA 92649-3608

Green Lotus Group LLC
8892 Cliffside Drive
Hunting Beach, CA 92646-2620

Hanh Huynh
18520 Callens Cir
Fountain Valley, CA 92708-6600

County of Orange
Attn: Treasurer-Tax Collector
P.O. Box 4515
Santa Ana, CA 92702-4515

## 3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served): (continued)